[Cite as *State v. Roberts*, 2018-Ohio-4885.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2017-CA-98 |
| | : | |
| v. | : | Trial Court Case No. 2015-CR-643B |
| | : | |
| AARON J. ROBERTS | : | (Criminal Appeal from |
| | : |  Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 7th day of December, 2018.

. . . . . . . . . . .

ANDREW P. PICKERING, Atty. Reg. No. 0068770, Clark County Prosecutor's Office, 50
East Columbia Street, Suite 449, Springfield, Ohio 45502
        Attorney for Plaintiff-Appellee

JENNIFER S. GETTY, Atty. Reg. No. 0074317, 7501 Paragon Road, Dayton, Ohio 45459
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

WELBAUM, P.J.

{¶ 1} In this case, Aaron Roberts appeals from a judgment sentencing him to eight years in prison for improperly discharging a weapon into a habitation, and to 36 months for having weapons under disability. These sentences were imposed concurrently with each other and consecutive to Roberts's sentence in an unrelated Clark County case.

{¶ 2} According to Roberts, the trial court erred in sentencing him to maximum sentences for his convictions because the maximum sentences were clearly and convincingly unsupported by the record and contrary to law. Roberts also argues that the trial court erred in imposing consecutive sentences because the record clearly and convincingly failed to support consecutive sentences.

{¶ 3} We conclude that the trial court did not err in imposing maximum and consecutive sentences. Accordingly, the judgment of the trial court will be affirmed.

I. Facts and Course of Proceedings

{¶ 4} Before we outline the facts and course of proceedings, we note that we have reviewed the entire record, including the presentence investigation report ("PSI") that was provided to the trial court before sentencing. The sealed PSI was filed with our court in October 2017.

{¶ 5} According to the record, Roberts and two co-defendants were indicted on various charges in December 2015. These charges arose from events that occurred on September 22, 2015. The bill of particulars indicated that, while Roberts was a passenger in a 1994 Chevrolet SUV, the occupants of the vehicle allegedly fired multiple shots into three residences located on Center Blvd. in Springfield, Ohio. In addition, the

occupants fired shots into a residence at a different location, on Pine Street in Springfield. Once the police found the SUV, they commanded the driver to stop. However, instead of stopping, the driver fled through the city at a high rate of speed, failing to obey several traffic signals and causing a serious risk of harm to persons and property. Ultimately, the vehicle was stopped in South Charleston, Ohio. Before the vehicle was stopped, the occupants threw weapons out of the windows.

{¶ 6} Due to prior felony drug convictions, Roberts was charged with one count of having weapons under disability in violation of R.C. 2923.13(A)(3), a third-degree felony. He was also charged with one count of improperly handling firearms in a motor vehicle in violation of R.C. 2923.16(B), a fourth-degree felony, one count of tampering with evidence in violation of R.C. 2921.12(A)(1), a third-degree felony, and two counts of improperly discharging a firearm at or into a habitation in violation of R.C. 2923.161(A)(1), both second-degree felonies.

{¶ 7} While the case was pending, Roberts was sentenced to thirty-six months in prison based on his no-contest plea in an unrelated case to having weapons under disability. The incident giving rise to that charge occurred in March 2015, and the criminal case against Roberts was designated as Clark County Common Pleas Case No. 15-CR-128. After Roberts appealed, we affirmed his conviction in that case in October 2016. *See* PSI, p. 5, and *State v. Roberts,* 2d Dist. Clark No. 2015-CA-104, 2016-Ohio-7327, ¶ 14.

{¶ 8} Returning to the facts of the case before us, we note that in July 2017, Roberts ultimately entered a plea of guilty to one count of having weapons under disability, a third-degree felony, and one count of improperly discharging a firearm at or

into a habitation, a second-degree felony. The remaining charges, including the firearm specification for improperly discharging a firearm, were dismissed. As part of the plea agreement, the State agreed to remain silent during sentencing. The trial court also ordered a presentence investigation. Transcript of July 20, 2017 Plea Hearing, p. 16.

{¶ 9} On October 17, 2017, the trial court filed a judgment entry sentencing Roberts to eight years in prison for improperly discharging a firearm at or into a habitation and 36 months in prison for having weapons under disability, with those sentences to be served concurrently with each other. The court also ordered the sentences to be served consecutively to Roberts's sentence in Clark County Common Pleas Case No. 2015-CR-128. Roberts now appeals from the trial court's judgment.

II. Alleged Error in Imposing Maximum Sentences

{¶ 10} Roberts's First Assignment of Error states that:

The Trial Court Erred in Sentencing Mr. Roberts to the Maximum Sentence When Said Sentence Was Not Clearly and Convincingly supported by the record [and] Was Contrary to Law.

{¶ 11} Under this assignment of error, Roberts contends that his maximum sentences were excessive based on the facts and circumstances in the record. In this regard, Roberts stresses the lack of information or victim impact statements in the record to support the trial court's comments about the victims' economic or psychological harm. Roberts also challenges the trial court's failure to acknowledge his remorse and the court's failure to mention that Roberts had testified against his co-defendants to secure their convictions, despite threats to Roberts's life and the lives of his family members.

{¶ 12} No dispute exists about the fact that Roberts received maximum sentences for both charges. Under R.C. 2929.14(A)(2), the maximum prison term that may be imposed for a second-degree felony is eight years. The maximum prison term for conviction of a third-degree felony under R.C. 2923.13(A)(3) is 36 months. *See* R.C. 2929.14(A)(3)(b).

{¶ 13} When we review felony sentences, we must apply the standard of review contained in R.C. 2953.08(G)(2). *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 9. This statute indicates that "an appellate court may increase, reduce, or modify a sentence, or it may vacate the sentence and remand for resentencing, only if it 'clearly and convincingly' finds either (1) that the record does not support certain specified findings or (2) that the sentence imposed is contrary to law." *State v. Mayberry*, 2d Dist. Montgomery No. 27530, 2018-Ohio-2220, ¶ 41, quoting R.C. 2953.08(G)(2).

{¶ 14} " 'Clear and convincing evidence is that measure or degree of proof which is more than a mere "preponderance of the evidence," but not to the extent of such certainty as is required "beyond a reasonable doubt" in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.' " *Marcum* at ¶ 22, quoting *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

{¶ 15} Sentences are "contrary to law" when they do not fall within statutory ranges for offenses or where trial courts fail to consider "the purposes and principles of felony sentencing set forth in R.C. 2929.11 and the sentencing factors set forth in R.C. 2929.12." *State v. Brown*, 2017-Ohio-8416, 99 N.E.3d 1135, ¶ 74 (2d Dist.), citing *State v. Pawlak*, 8th Dist. Cuyahoga No. 103444, 2016-Ohio-5926, ¶ 58. However, trial courts do not

have to make to make any findings, and they do not need to provide specific reasons for imposing maximum sentences. *State v. Whitt*, 2d Dist. Clark No. 2014-CA-125, 2016-Ohio-843, ¶ 8; *State v. King*, 2013-Ohio-2021, 992 N.E.2d 491, ¶ 45 (2d Dist.).

{¶ 16} According to Roberts, maximum sentences are to be imposed only "if the defendant has committed the worst form of the offense or if the defendant poses the greatest likelihood of committed future crimes." Appellant's Brief, p. 5, citing R.C. 2929.14(C). However, Roberts is relying on a version of the statute that was declared unconstitutional and was severed from the Ohio Revised Code in *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470. *See State v. Latham*, 2d Dist. Champaign No. 08-CA-17, 2009-Ohio-3517, ¶ 4 (discussing former R.C. 2929.14(C) and its severance). As was noted, trial courts do not need to make findings or provide reasons for imposing maximum sentences. Instead, they need only consider applicable statutory criteria, including those set out in R.C. 2929.11 and R.C. 2929.12. *State v. Dixon*, 2d Dist. Clark No. 2015-CA-67, 2016-Ohio-2882, ¶ 14-15. Accordingly, Roberts's sentence was not contrary to law by failing to adhere to the criteria he has suggested.

{¶ 17} Under R.C. 2929.11, trial courts are to be guided by the overriding purposes of felony sentencing, which are to "to protect the public from future crime by the offender and others and to punish the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources." R.C. 2929.11(A). Consistent with this subsection of the statute, the trial court stated that it had considered the factors that "would both punish the defendant and protect the community from further criminal activity by the Defendant and others." Transcript of October 13, 2017 Disposition Hearing, p. 5. The court also

discussed the considerations outlined in R.C. 2929.11(B). *Id.* at pp. 7-8.

{¶ 18} With respect to R.C. 2929.12, subsection (B) lists nine factors indicating that an offender's conduct is more serious than conduct normally constituting the offense, and R.C. 2929.12(C) outlines four factors indicating that an offender's conduct is less serious than conduct normally constituting the offense. R.C. 2929.12(D) and (E) each list five factors to consider in deciding if an offender is likely to commit future crimes. Finally, under R.C. 2929.12(F), an offender's military service, if any, is considered. Because Roberts never served in the military, R.C. 2929.12(F) does not apply.

{¶ 19} As a factor indicating that the conduct was more serious than normal conduct constituting the offense, the court mentioned R.C. 2929.12(B)(2), which provides that "[t]he victim of the offense suffered serious physical, psychological, or economic harm as a result of the offense." The trial court commented that it did not have information about economic harm, although it did see evidence of damage caused to various residences. The court then stated that people were obviously "put in fear because they were in their residences when the bullets started flying." Disposition Hearing at p. 5. This observation is supported by the PSI, which indicates that city residents called the police after hearing shots. The police also found many shell casings. PSI at pp. 12-15.

{¶ 20} Consistent with R.C. 2929.12(C), the trial court remarked that it found no factors indicating that the offense was less serious than conduct normally constituting the offense. *Id.* The court also considered the factors in R.C. 2929.12(D), including that Roberts was out on bond in Case No. 15-CR-128 when he committed the offenses, that Roberts had an extensive criminal history, and that Roberts had admitted he had very little employment experience and "never really had a job after his teen years because he

was dealing dope." Disposition Hearing at pp. 5-7. Finally, the court stated that no factors in R.C. 2929.12(E) applied, and that Roberts scored high on the Ohio Risk Assessment Survey ("ORAS"). *Id.* at p. 7. Roberts received an ORAS score of 29, which is high. PSI at p. 1. In its sentencing entry, the court reiterated that it had considered the principles and purposes of sentencing under R.C. 2929.11 and the seriousness and recidivism factors under R.C. 2929.12.

{¶ 21} After reviewing the record, we cannot clearly and convincingly find that maximum sentences were unsupported by the record or were contrary to law. Notably, we have previously said that "a trial court may rely on 'a broad range of information' at sentencing." *State v. Bodkins*, 2d Dist. Clark No. 10-CA-38, 2011-Ohio-1274, ¶ 43, quoting *State v. Bowser*, 186 Ohio App.3d 162, 2010-Ohio-951, 926 N.E.2d 714, ¶ 13 (2d Dist.). During sentencing, "evidence the court may consider is not confined to the evidence that strictly relates to the conviction offense because the court is no longer concerned * * * with the narrow issue of guilt." *Bowser* at ¶ 14, citing *Williams v. New York*, 337 U.S. 241, 246, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949). Courts, therefore, may consider "hearsay evidence, facts related to charges that were dismissed pursuant to a plea bargain, and allegations contained in a PSI report." *State v. Bautista*, 2d Dist. Clark No. 2015-CA-74, 2016-Ohio-5436, ¶ 12, citing *State v. Clemons*, 2d Dist. Montgomery No. 26038, 2014-Ohio-4248, ¶ 8.

{¶ 22} The trial court noted during the sentencing hearing that the facts of the case "which came out at the time of the plea, also came out in much more detail during the trial of the co-defendant." Disposition Hearing at pp. 4-5. As a result, the court knew far more about the case than just the facts that were recited in the indictment and at the plea

hearing. Roberts's own counsel acknowledged during the sentencing hearing that the facts of the case were "terrible." *Id.* at p. 4.

{¶ 23} During the sentencing hearing, the trial court also discussed Roberts's criminal history at some length. *Id.* at pp. 5-7. According to the PSI, Roberts was 31 years old at the time of the incident. Roberts's criminal record began in 2000, when he was 16 years old. Juvenile rehabilitation was unsuccessful, and after being bound over to adult court when he was 17, Roberts was sentenced in July 2002 to 11 months in prison for possession of drugs. He had just turned 18 years old. Shortly after leaving prison, Roberts was sentenced in three separate criminal cases: one involved tampering with evidence; one involved drug possession; and the third involved possession of crack cocaine. Roberts's sentences amounted to a total of seven years in prison, with both consecutive and concurrent terms being imposed. The latest of these sentences was imposed in February 2004.

{¶ 24} Roberts had further criminal convictions in 2011, 2013, and 2014 in Clark County for drug abuse, and a conviction in January 2017 relating to a 2015 case in Fairborn, Ohio. Finally, in addition to the convictions in the case before us, Roberts had the conviction in Case No. 15-CR-128, for which he received a three-year sentence. Roberts, therefore, had a significant criminal history and had not successfully responded to prior incarceration.

{¶ 25} When Roberts was questioned during the presentence investigation, he said that he had not had a job since his teen years and that he was dealing dope. According to Roberts, the incidents on the evening of September 22, 2015, resulted from fighting between two groups who were shooting at each other. The fighting began when

the other group gave a "dope fiend" some free drugs to reveal the location of Roberts's group. The opposing group then came by, "shooting." PSI at p. 2. The clear inference is that opposing groups of drug dealers were shooting at each other.

{¶ 26} The police reports submitted with the PSI indicate that a series of shootings occurred the evening of September 22, 2015. According to a probable cause affidavit, ten or more gunshots were fired in the area of 1775 Woodward Avenue, and the police had also been called about shots that were fired earlier in the evening. Both of these particular incidents involved the SUV in which Roberts was a passenger. During the police chase, a stolen AK-47 assault rifle and a .223 caliber rifle were thrown from the vehicle. An AK-47 magazine was still in the SUV when it was finally stopped.

{¶ 27} Furthermore, bullets were found inside and outside residential homes where occupants of the SUV had reportedly been shooting. The fact that opposing groups were shooting at each other in multiple locations increased the potential danger to innocent parties.

{¶ 28} Once the police began pursuit, a chase ensued inside and outside the city, during which the SUV's driver failed to stop for stop signs and traffic signals, and was driving at a high rate of speed. This clearly posed a danger to the police and bystanders.

{¶ 29} At the sentencing hearing, defense counsel commented that while the facts of the case were "terrible," Roberts had cooperated with the State and had testified at a co-defendant's trial even after Roberts's life and his family's life had been threatened by the co-defendants. Disposition Hearing at p. 4. Roberts also apologized and expressed a desire to lead a crime-free life. *Id.* However, "the trial court is in the best position to address the genuineness of a defendant's statement at the sentencing hearing since it

has the opportunity to observe the demeanor of the defendant." *State v. Lewis*, 11th Dist. Lake No. 2001-L-060, 2002-Ohio-3373, ¶ 18. *See also State v. Hand*, 2d Dist. Clark No. 2016-CA-51, 2017-Ohio-7340, ¶ 9 ("the trial court had discretion to conclude, based in part on [defendant's] decades-long criminal career, that his expressions of remorse were not genuine"). In the case before us, the trial court did not have to credit Roberts's statements of remorse.

{¶ 30} In summary, the trial court properly considered the criteria set forth in R.C. 2929.11 and 2929.12, the record does not clearly and convincingly fail to support the court's decision to impose maximum sentences, and the sentences were not contrary to law. Accordingly, the first assignment of error is overruled.

### III. Alleged Error in Imposing Consecutive Sentences

{¶ 31} Roberts's Second Assignment of Error states that:

The Trial Court Erred in Imposing Consecutive Sentences as the Record Does Not Clearly and Convincingly Support Consecutive Prison Terms.

{¶ 32} Under this assignment of error, Roberts contends that the trial court erred in sentencing him to consecutive terms in the current case and in imposing those sentences consecutively to his sentence in Clark County Common Pleas Case No. 15-CR-128. Appellant's Brief at p. 7. Before addressing this assignment of error, we note that Roberts's assertion is partly incorrect. The trial court imposed concurrent, not consecutive prison terms in the current case; these terms were then imposed consecutive to the prison term in Case No. 15-Ohio-128.

{¶ 33} After deciding sentences for particular crimes, sentencing judges have discretion to order that individual sentences be served consecutively. *State v. McGlothan*, 2d Dist. Clark Nos. 2014-CA-120, 2015-Ohio-2713, ¶ 8. Moreover, while a presumption exists under R.C. 2929.41(A) that "a prison term, jail term, or sentence of imprisonment shall be served concurrently with any other prison term, jail term, or sentence of imprisonment imposed by a court of this state," R.C. 2929.41(A) also makes an exception for sentences imposed pursuant to R.C. 2929.14(C).

{¶ 34} Regarding consecutive sentences, R.C. 2929.14(C)(4) provides, in pertinent part, as follows:

> If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
>
> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing * * *.
>
> * * *
>
> (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶ 35} "In order to impose consecutive terms of imprisonment, a trial court is

required to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry, but it has no obligation to state reasons to support its findings." *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, syllabus.

{¶ 36} The trial court specifically made findings under R.C. 2929.14(C)(4)(a) and (c) during the sentencing hearing, by stating that:

> The Court finds that consecutive service is necessary to protect the public from future crime and to punish the Defendant, that consecutive sentences are not disproportionate to the seriousness of his conduct and to the danger that he poses to the public. Also find that the Defendant committed one or more multiple offenses while he was awaiting trial or sentencing, and the Defendant's history of criminal conduct demonstrates consecutive sentences are necessary to protect the public from future crime by the Defendant.

Disposition Hearing at pp. 8-9. The court also included similar findings in the judgment entry. *See* Doc. #36, Judgment Entry of Conviction Warrant for Removal, pp. 2-3.

{¶ 37} The record demonstrates that the trial court made the necessary findings for ordering that Roberts's sentences be served consecutively to his prior sentence for having weapons under disability. Most significantly, the trial court found under R.C. 2929.14(C)(4)(a) that Roberts committed the crimes at issue "while he was awaiting trial or sentencing" on the prior weapons offense. Roberts does not dispute that finding, but asserts that because the earlier offense "occurred within the same general time frame as the instant offenses," he should have been treated more leniently. Appellant's Brief at p.

9.

**{¶ 38}** The record fails to support that proposition, nor does it support Roberts's characterization of his prior criminal history as "relatively minor." As noted above, Roberts had a lengthy criminal history. Prior incarceration was also unsuccessful in preventing him from engaging in actions that were very dangerous to the community.

**{¶ 39}** Again, the trial court has "has no obligation to state reasons to support its findings" in connection with the statutory findings required to impose consecutive sentences under R.C. 2929.14(C)(4). *Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, at syllabus.

**{¶ 40}** Under the applicable standard of review, the record does not clearly and convincingly fail to support the trial court's decision to impose consecutive sentences, and the consecutive sentences were not contrary to law. Accordingly, the second assignment of error is overruled.

IV.   Conclusion

**{¶ 41}** All of Roberts's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

TUCKER, J., concurs.

FROELICH, J., concurring:

**{¶ 42}** Even if a sentence is not "contrary to law" under R.C. 2953.08(G)(2), "it is still reviewable and we look to the whole record to determine whether we clearly and convincingly find that the record does not support the sentence." *State v. Jones*, 2018-

Ohio-498, 105 N.E.3d 702, ¶ 16 (8th Dist.), *appeal allowed in part*, 153 Ohio St.3d 1474, 2018-Ohio-3637, 106 N.E.3d 1260. Pursuant to *Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, an appellate court may modify or vacate a sentence if it clearly and convincingly finds that the record does not support certain specified findings or, stated otherwise, finds that the findings clearly and convincingly are unsupported by the record. Consequently, a trial court's conclusory and formulaic recitation in the judgment entry of the applicable statutory language from R.C. 2929.11, R.C. 2929.12, and R.C. 2929.14(C)[1] will not prevent a sentence from being reversed on appeal if the record clearly and convincingly does not support the trial court's findings. *See State v. Brewer*, 2017-Ohio-119, 80 N.E.3d 1257, ¶ 10 (2d Dist.).

{¶ 43} Our responsibility as to individual or consecutive sentences is to review the record and the trial court's findings based on that record, and determine if those findings clearly and convincingly are unsupported by that record. That is to say, there should be something in the record, whether it is evidenced in the facts of the particular case, the PSI, or otherwise, that relates to the principles of R.C. 2929.11 and the factors in R.C. 2929.12, and that supports the findings. If there is nothing in the record to support the findings then, in many situations, the findings clearly and convincingly are not supported by the non-existent record.

{¶ 44} A factual basis must exist in the record for whatever conclusion the trial court draws as to the appropriate sentence to be imposed in a particular case. Moreover,

---

[1] "[A]s long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld." *Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 29.

if a reviewing court is unable to discern from the record what that factual basis is, the sentence is subject to reversal under R.C. 2953.08(G)(2)(a). Procedural fairness, not to mention appellate review, is greatly enhanced when trial courts explain their conclusions regarding the relevant felony sentencing considerations.

{¶ 45} In this case, the record is replete with facts as detailed by the majority. I agree that we cannot clearly and convincingly find that the record does not support the sentence, and I concur.

Copies sent to:

Andrew P. Pickering
Jennifer S. Getty
Hon. Richard J. O'Neill