[Cite as *State v. Serna*, 2019-Ohio-4102.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CHAMPAIGN COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2018-CA-16 |
| | : | |
| v. | : | Trial Court Case No. 2017-CR-126 |
| | : | |
| ELY RAY SERNA | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 4th day of October, 2019.

. . . . . . . . . .

JANE A. NAPIER, Atty. Reg. No. 0061426, Assistant Prosecuting Attorney, Champaign County Prosecutor's Office, 200 North Main Street, Urbana, Ohio 43078
      Attorney for Plaintiff-Appellee

STEPHEN P. HARDWICK, Atty. Reg. No. 0062932 and CHARLYN BOHLAND, Atty. Reg. No. 0088080, Ohio Public Defenders Office, 250 East Broad Street, Suite 1400, Columbus, Ohio 43215
      Attorneys for Defendant-Appellant

. . . . . . . . . . . . .

TUCKER, J.

**{¶ 1}** Defendant-appellant, Ely Ray Serna, appeals from his convictions for one count of attempted murder, a first degree felony pursuant to R.C. 2903.02(A) and 2923.02, along with a firearm specification under R.C. 2941.145(A); one count of felonious assault, a second degree felony pursuant to R.C. 2903.11(A)(2) and (D)(1)(a); and one count of inducing panic, a fourth degree felony pursuant to R.C. 2917.31(A)(3) and (C)(3).   Serna, who pleaded guilty in lieu of a trial, argues in two assignments of error that the trial court sentenced him contrary to law by relying on evidence outside the record, in contravention of R.C. 2929.19(B)(1), and that the court erred by sentencing him to the maximum terms of imprisonment authorized under R.C. 2929.14.   For the following reasons, we find that the trial court did not err, and Serna's convictions are therefore affirmed.

## I. Facts and Procedural History

**{¶ 2}** Serna, at the time a student in his third year, arrived at West Liberty-Salem High School on the morning of January 20, 2017, carrying a disassembled shotgun in a backpack.   He proceeded to a men's bathroom so that he could reassemble the shotgun without being observed, but he found the bathroom occupied by a fellow student.   Once the other student left, Serna reassembled the weapon, donned a crude mask made from duct tape, and then waited with the apparent intention of shooting whomever entered next.   Another student walked into the bathroom moments later, and Serna shot him twice.

**{¶ 3}** A teacher entered the bathroom to investigate the disturbance.   He ran out yelling "shooter" after encountering Serna, who chased him into a nearby classroom. Serna fired two shots into the classroom door, as well as two shots into the door of the

adjacent classroom, and retreated back into the bathroom. There, Serna discovered that the student he had shot was still alive, which seems to have caused him to experience a change of heart; making no further attempt to cause harm, he surrendered his shotgun when school personnel entered the room to assist the student.[1] Within minutes, an officer with the West Liberty Police Department arrived and took Serna into custody.

{¶ 4} Initially charged as a juvenile, Serna was bound over to the General Division of the Champaign County Common Pleas Court on June 12, 2017, and the following day, a Champaign County grand jury issued an indictment charging him with two counts of attempted murder; three counts of felonious assault; six counts of improperly discharging a firearm in a school safety zone; one count of inducing panic; and one count of illegal conveyance or possession of a deadly weapon in a school safety zone. The charges included 50 specifications.

{¶ 5} On June 21, 2017, Serna entered pleas of not guilty and not guilty by reason of insanity. Throughout the ensuing 10 months, four mental health professionals interviewed Serna at various times to evaluate whether he understood the wrongfulness of his actions at the time of the offense, and they agreed that Serna suffered from major depression. Three of the four found that Serna suffered from major depression with psychotic features and concluded that he was not capable of understanding the wrongfulness of his actions; the fourth disputed that Serna experienced psychosis and concluded that he was capable of distinguishing right from wrong at the time of the offense.[2]

---

[1] Despite suffering serious harm, the student survived.

[2] The report of the mental health professional who concluded that Serna was capable of

{¶ 6} On April 6, 2018, Serna changed his plea to guilty after reaching an agreement with the State. At Serna's sentencing hearing on May 2, 2018, the trial court sentenced him to serve terms in prison of 11 years on the charge of attempted murder, plus three years for the attached firearm specification; eight years on the charge of felonious assault; and 18 months on the charge of inducing panic. In total, the court sentenced Serna to 23 and one-half years in prison, with the terms to be served consecutively.

{¶ 7} The court indicated that it determined the maximum penalties to be appropriate because of the severity of the harm caused by the shooting, and further because it did not believe that Serna was suffering from psychosis at the time, meaning that in its view Serna understood the wrongfulness of his actions. *See* Transcript of Sentencing Hearing 107:25-119:5, May 2, 2018. Yet, the court indicated further that even if Serna had been suffering from psychosis, it would still have held him fully responsible because of his voluntary abuse of the prescription medication Vyvanse;[3] according to the court's analysis of an advisory it found on the manufacturer's website,

---

distinguishing right from wrong at the time of the offense is not part of the record. Regardless, the conclusion itself entered the record during Serna's sentencing hearing as hearsay evidence through the testimony of a witness called to provide mitigation testimony on Serna's behalf, as well as through the closing statement made by Serna's counsel. *See, e.g.*, *State v. Roberts*, 2d Dist. Clark No. 2017-CA-98, 2018-Ohio-4885, ¶ 21 (noting that a court may consider hearsay evidence for purposes of sentencing).

[3] The U.S. Food & Drug Administration maintains an online repository of medication guides, which are "FDA-approved documents * * *." U.S. Food & Drug Administration, *Medication Guides*, www.accessdata.fda.gov/scripts/cder/daf/index.cfm (accessed Sept. 23, 2019). According to the guide for Vyvanse, the medication is intended for the treatment of attention deficit hyperactivity disorder and moderate to severe eating disorder in adults, and its active ingredient is lisdexamfetamine dimesylate.

the medication could have caused Serna to experience symptoms of psychosis as a side effect. *See id.*

{¶ 8} On May 3, 2018, the court docketed its Journal Entry of Judgment, Conviction, and Sentence [hereinafter *Judgment Entry*]. Serna timely filed his notice of appeal on May 17, 2018.

## II. Analysis

{¶ 9} For his first assignment of error, Serna contends that:

THE TRIAL COURT'S SENTENCE WAS CONTRARY TO LAW BECAUSE THE TRIAL COURT IMPOSED MAXIMUM CONSECUTIVE SENTENCES BASED ON SPECULATING [sic] OUTSIDE THE RECORD IN VIOLATION OF THE MANDATE OF R.C. 2929.19(B)(1). T.P. 1-134 (SENTENCING); MAY 3, 2018 JOURNAL ENTRY OF JUDGMENT, CONVICTION, AND SENTENCE.

{¶ 10} Under R.C. 2929.19(A), a "court shall hold a sentencing hearing before imposing a sentence * * * upon an offender who was convicted of or pleaded guilty to a felony." The statute allows "the offender, the prosecuting attorney, the victim or the victim's representative * * * , and, with the approval of the court, any other person" to "present information relevant to the imposition of sentence." *Id.* R.C. 2929.19(B)(1) adds that "[a]t the sentencing hearing, the court, * * *, shall consider the record, any information presented at the hearing by any person pursuant to [R.C. 2929.19](A) * * *, and, if one was prepared, the presentence investigation report * * *, [as well as] any victim impact statement[s] made pursuant to [R.C.] 2947.051." On appeal, a sentence may be modified or vacated only if the appellate court finds on the basis of clear and convincing

evidence that the record does not support the sentence or that the sentence is otherwise contrary to law.[4] R.C. 2953.08(G); *see State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 22-23; *State v. Davis*, 2d Dist. Champaign No. 2016-CA-22, 2017-Ohio-6904, ¶ 8, citing *Marcum* at ¶ 22.

{¶ 11} Serna claims that the trial court violated R.C. 2929.19(B)(1) by relying on the results of "its own * * * research" into the effects of Vyvanse because the information obtained by the court was neither part of the record nor the subject of testimony offered by a qualified expert. *See* Appellant's Brief 8-10. Specifically, Serna faults the court for "speculat[ing] that [he] took the drug much more shortly before the shooting" than he acknowledged, and for further speculating "that the drug contributed to his psychosis."[5] *See id.* at 8.

{¶ 12} Although at Serna's sentencing hearing the trial court indulged in an ill-advised exposition of its own "belief[s]" regarding "the side effects of [Serna's] us[e] of Vyvanse" and the possibility that his consumption of the drug "contributed" to his mental health issues, Serna overstates the extent to which the court thus "veered * * * off course." Transcript of Sentencing Hearing 115:18-116:2, May 2, 2018; Appellant's Brief 8; *see also* Judgment Entry 23. Four mental health professionals who interviewed Serna had

---

[4] Clear and convincing evidence is a "degree of proof [greater] than a mere 'preponderance of the evidence' " that "produce[s] in the mind of the trier of fact[ ] a firm belief or conviction as to the facts sought to be established." *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 22.

[5] The trial court did not speculate that Serna took Vyvanse "much more shortly before the shooting" than Serna himself had acknowledged, though the court surmised that he had taken it more frequently than he acknowledged. Transcript of Sentencing Hearing 116:3-116:15.

mentioned his use of Vyvanse in their reports, as did the author of the presentence investigation report, and Serna attached copies of three of the mental health professionals' reports to his sentencing memorandum, though he made no mention of Vyvanse in the memorandum itself. Defendant's Sentencing Memorandum 1-11 and Exs. A, F and H-I, Apr. 27, 2017. For its part, the State referred expressly to Serna's use of Vyvanse in its sentencing memorandum as support for its contention that he had "demonstrated a pattern of drug abuse." State's Sentencing Memorandum 8, Apr. 27, 2018.

**{¶ 13}** Serna's use of Vyvanse was, therefore, a matter of record. The trial court, however, "was unfamiliar with [Vyvanse]," so to prepare for Serna's sentencing hearing, it "consulted [the manufacturer's website] to have a better understanding of the drug and [to provide] context" for assessing the significance of Serna's reported use, as well as evaluating the opinions offered by the mental health professionals. Judgment Entry 23, fn.1; Transcript of Sentencing Hearing 29:14-30:5.

**{¶ 14}** With respect to basic facts about Vyvanse, such as the drug's active ingredient and clinical applications, the court did not violate R.C. 2929.19(B)(1) by relying on the information it found on the manufacturer's website. A trial court may consider evidence for purposes of a sentencing hearing that would be excluded from consideration at a trial because the Ohio Rules of Evidence do not apply to sentencing hearings. Evid.R. 101(C)(3); *see also, e.g., State v. Shouse*, 2d Dist. Montgomery No. 26172, 2015-Ohio-3918, ¶ 39. Sentencing courts consequently "may consider 'hearsay evidence, facts related to charges that were dismissed pursuant to a plea bargain, and allegations contained in a [presentence investigation] report.' " *State v. Davis*, 2d Dist. Clark No.

2018-CA-49, 2019-Ohio-1904, ¶ 47, quoting *State v. Bautista*, 2d Dist. Clark No. 2015-CA-74, 2016-Ohio-5436, ¶ 12.

{¶ 15} Here, even had Serna's sentencing hearing been governed by the rules of evidence, the court would have had the discretion to take judicial notice of the chemical composition and recommended use of Vyvanse. That information was "not subject to reasonable dispute" because it was susceptible to "ready [confirmation] by resort to sources whose accuracy [could not] reasonably [have been] questioned." *See* Evid.R. 201(B)-(C).

{¶ 16} At the sentencing hearing, the court further used the information it obtained to question a mental health professional called by Serna to offer mitigation testimony, and to question Serna himself. Transcript of Sentencing Hearing 28:11-33:20 and 100:3-100:14. For these purposes, the court also considered the manufacturer's warnings about the possible side effects of taking Vyvanse. *Id.* at 29:14-30:14; Appellant's Brief 8. According to the court's synopsis, the side effects included "trouble sleeping, * * * anxiety, and * * * increased heart rate," and for patients with "mental problems" or "a family history of suicide, bipolar illness, or depression," the side effects further included "new or worsening behavior and thought problems [sic]"; "bipolar illness"; symptoms "such as seeing or hearing things that are not real, believing things that are not true" and "being suspicious"; and "having new maniac [sic] symptoms."[6] Transcript of Sentencing Hearing 29:22-30:5. Serna maintains that the court should not have "assum[ed] that the information on the [web]site [was] reliable," but the logic of this argument is dubious as it

---

[6] Whether the trial court was quoting directly from the manufacturer's website is unclear.

relates to the side-effects advisory.   As the purveyor of Vyvanse, the manufacturer would have had little reason to exaggerate the risks of taking the medication.

**{¶ 17}** After it finished questioning Serna, and following a short recess, the trial court discussed its review of the sentencing factors set forth in R.C. 2929.12.   The court devoted considerable time to its discussion of the factors listed in Paragraph (B), explaining that it viewed the shooting as especially serious because many parents, students and teachers were emotionally traumatized; because the one student whom Serna shot was critically injured; because, being a student himself, Serna's relationship to the faculty, staff and students at West Liberty-Salem High School facilitated the shooting; and because the shooting was carefully premeditated.   *See* Transcript of Sentencing Hearing 107:25-113:14.

**{¶ 18}** Next, the court discussed the factors listed in Paragraph (C), finding Serna's mental health issues to be "substantial grounds to mitigate [his] conduct," though "not [substantial] enough to constitute a defense."   *Id.* at 113:15-113:23.   The court noted that four "mental health evaluators [had] found that [Serna] suffered from major depression," but because it viewed the prospect that Serna had been "suffering from psychotic features" at the time of the shooting to be "questionable," it did "not * * * render an opinion" on that point.   *See id.* at 113:23-114:8.   Nevertheless, the court proceeded to explain that it determined the "factors establishing that [Serna]'s conduct [was] more serious" outweighed "the factors establishing [that his] conduct [was] less serious," irrespective of whether Serna was suffering from psychosis at the time of the shooting. *See id.* at 115:18-119:5.

**{¶ 19}** Referring to the side-effects advisory posted by the manufacturer of

Vyvanse on its website, the court reasoned that even had Serna been diagnosed definitively with psychosis, his "voluntary and active consumption of Vyvanse actually served as the catalyst for the psychotic state." *Id.* at 115:18-115:19. The court supported its reasoning with the observation that during his mental health evaluations, Serna had described experiencing symptoms identical to "some of those side effects," including "trouble sleeping, * * * anxiety, increased heart rate, and delusional thoughts." *Id.* at 118:15-118:19. In addition, the court theorized that Serna used Vyvanse more frequently than he acknowledged for the record, given that Serna was having a "very successful * * * season" on the school's wrestling team, because a "side-effect of Vyvanse is weight loss," which could be "critical * * * for a wrestler attempting to make weight." *Id.* at 117:15-117:17. Serna, who had also been diagnosed with bulimia, had admitted during mental health interviews that he obtained Vyvanse from another student on the wrestling team, and that he took the drug because it made him feel more energetic.

{¶ 20} The trial court should not have indulged in an analysis of the impact that Serna's use of Vyvanse might have had on his mental health, particularly because, as the court itself noted, the "side-effects of that voluntary consumption were not considered by [the] mental health professionals [who evaluated Serna] before [they reached their] forensic mental health conclusions and diagnoses." *Id.* at 116:11-116:15. Regardless, the court was free to determine the relative weight to be accorded the various sentencing factors listed in R.C. 2929.12. *See, e.g., State v. Bynum*, 3d Dist. Shelby No. 17-18-20, 2019-Ohio-3139, ¶ 11; *State v. Patrick*, 10th Dist. Franklin No. 10AP-26, 2011-Ohio-1592, ¶ 28. The entirety of the court's discussion of Serna's use of Vyvanse, the side-effects of the drug, and the possibility that Serna had been suffering from psychosis was offered

as explanation for why the court determined that the harm caused by the shooting outweighed all other sentencing factors, and in that respect, the discussion was superfluous. Even assuming for sake of argument that the court's reasoning was partly flawed, the court sentenced Serna primarily on the basis of the harm his actions caused, and the record provided ample support.

{¶ 21} Moreover, Serna accepted legal responsibility for his actions by pleading guilty. The trial court explained that it did not find Serna's mental health to be a persuasive mitigating factor because it believed, as a matter of fact, that Serna was able at the time of the shooting to distinguish right from wrong, and reality from delusion, adding that even had Serna been suffering from psychosis, he would have been nonetheless responsible because he was voluntarily using a medication, without the advice of a physician, that could have caused him to become psychotic. *See* Transcript of Sentencing Hearing 115:18-119:5. Irrespective of whether the court was correct, the issue of Serna's responsibility for the shooting had been resolved as a matter of law by Serna's plea. Serna's first assignment of error is overruled.

{¶ 22} For his second assignment of error, Serna contends that:

THE TRIAL COURT ERRED WHEN IT SENTENCED ELY SERNA TO A MAXIMUM PRISON SENTENCE OF 23½ YEARS, BECAUSE THAT SENTENCE IS NOT SUPPORTED BY THE RECORD IN THIS CASE, IN VIOLATION OF R.C. 2953.08(G) AND 2929.11(A). A-1; T.P. 126; MAY 3, 2018 JOURNAL ENTRY OF JUDGMENT, CONVICTION, AND SENTENCE, P. 29.

{¶ 23} Serna argues that the trial court failed to consider his age as a mitigating

factor, thereby invalidating his sentences. At the time of the shooting, Serna was 17.

**{¶ 24}** A "trial court has full discretion to impose any sentence within the authorized statutory range, and [it] is not required to make any findings or give its reasons for imposing maximum or more than minimum sentences." *State v. King*, 2013-Ohio-2021, 992 N.E.2d 491, ¶ 45 (2d Dist.), citing *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, paragraph seven of the syllabus. Even so, the "court must comply with all applicable rules and statutes, including R.C. 2929.11 and R.C. 2929.12." *Id.*, citing *State v. Mathis*, 109 Ohio St.3d 54, 2006-Ohio-855, 846 N.E.2d 1, ¶ 37.

**{¶ 25}** Although the trial court did not refer to Serna's age as a mitigating factor, the court did refer to his age immediately before pronouncing sentence, thanking him for maintaining a composed demeanor throughout the hearing because "other juvenile offenders [might] not [have] conducted themselves in a respectful manner." *See* Transcript of Sentencing Hearing 104:15-104:19. Additionally, in the Judgment Entry, the court noted, in reliance on research reported by one of the mental health professionals who interviewed Serna, that because the human brain is not completely developed until approximately the age of 25, Serna "was not * * * neurologically developed" at the time of the offense. *See* Judgment Entry 27. The court, then, was certainly aware of Serna's age, and the court stated that it had considered the purposes and principles of felony sentencing, along with the seriousness, recidivism and other sentencing factors set forth in R.C. 2929.12. *See id.* at 104:15-104:19 and 106:21-107:24.

**{¶ 26}** Yet, the court did not have an obligation to consider Serna's age as a mitigating factor. Serna "did not receive a life sentence without parole," but instead, "he received a sentence of [23 and one-half years] in prison," after which he will be released.

*State v. Hawkins*, 2015-Ohio-5383, 55 N.E.3d 505, ¶ 16 (2d Dist.). The trial court, however, would have had to consider Serna's age as a mitigating factor only before imposing a sentence of life without parole. *See, e.g., State v. Starling*, 2d Dist. Clark No. 2018-CA-34, 2019-Ohio-1478, ¶ 66-67; *Hawkins* at ¶ 11-16. As a result, even if the court did not consider age as a mitigating factor in this case, it did not err by declining to do so. Serna's second assignment of error is overruled.

### III. Conclusion

{¶ 27} For sentencing purposes, the trial court permissibly relied on basic information about the prescription medication Vyvanse posted by the manufacturer on its website, such as the drug's chemical composition and intended clinical applications. Although the trial court engaged in an ill-advised analysis of the possible effects that Vyvanse might have had on Serna's mental health in light of the manufacturer's side-effects advisory, its analysis was superfluous because it sentenced Serna primarily on the basis of the harm caused to the victims of the shooting. The court, furthermore, was not required to consider Serna's age as a mitigating factor. Therefore, Serna's convictions are affirmed.

. . . . . . . . . . . . .

WELBAUM, P.J. and HALL, J., concur.

Copies sent to:

Jane A. Napier
Stephen P. Hardwick
Charlyn Bohland
Hon. Nick A. Selvaggio